IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SAMUEL OLATUBOSUN, | ) | |
| Plaintiff, | ) ) ) | 8:07CV260 |
| v. | ) ) | |
| EASTERN NEBRASKA, HUMAN SERVICES AGENCY | ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) ) | |

This matter is before the court on defendant Eastern Nebraska Human Services Agency's Motion for Summary Judgment, Filing No. 19. Plaintiff Samuel Olatubosun filed this action alleging that the defendant constructively terminated him based on his race, color or national origin, or in the alterative, in retaliation for his filing of discrimination charges with the Nebraska Equal Opportunity Commission ("NEOC") and the Federal Equal Employment Opportunity Commission ("EEOC"). Defendant alleges that the plaintiff's complaints are "petty and slight disputes that fail to rise to the level of a hostile work environment" and that plaintiff voluntarily resigned his position. Filing No. 21, ENHSA's Brief in Support of Motion for Summary Judgment.[1]

The local rules for this court require that "[i]f a motion requires the court to consider any factual matters not established by the pleadings, . . . Every factual assertion in the motion and supporting brief shall cite to the pertinent page of the pleading, affidavit,

---

[1] The motion for summary judgment requests the opportunity to present oral testimony. However, the request does not comply with the local rules. "The brief of the moving party shall state why oral argument or an evidentiary hearing is requested or will be of assistance to the court's determination of the issue raised by the motion, and approximately how much time will be required for the argument or hearing." NECivR 7.1(d). Because there has been no showing as to why oral testimony is necessary in this matter, or how the oral testimony differs from the evidence provided in support of the motion, the court denies the motion for oral testimony.

deposition, discovery material, or other evidence upon which the moving party relies." 7.1(a)(2)(A). Defendant has failed to provide a brief that complies with the court rule; therefore, the court derives the following from the pleadings, affidavits and exhibits filed in this case.

Plaintiff, Samuel Olatubosun, is an Africa-American of Nigerian descent. Filing No. 27, Plaintiff's Brief in Support of His Opposition to Defendant's Motion for Summary Judgment, p. 1. Olatubosun was a Program Manager with the Eastern Nebraska Office of Retardation and Developmental Disabilities (ENCOR) which is part of Eastern Nebraska Human Services Agency ("ENHSA").[2] Filing No. 20-2, Affidavit (hereafter "Aff.") of Nancy Cohen. During the time he worked for ENHSA, Olatubosun worked at the Benson Industrial Training Center located at 4910 N. 72nd Street, Omaha, Nebraska, and reported to Ted Franklin. *Id*. Olatubosun alleges he was constructively discharged because of his race, color and national origin, or in the alternative, that he was constructively discharged because he filed a discrimination charge with the NEOC and the EEOC. Filing No. 9, Amended Complaint.

On December 5, 2006, Olatubosun filed a charge with the NEOC and EEOC. On April 7, 2007, NEOC issued a determination of "no reasonable cause." On May 24, 2007, the EEOC adopted the findings of the NEOC. Filing No. 10, Answer.

The defendant provides four instances that Olatubosun reported in relation to his hostile work environment claim. On a date not provided in the record, a co-worker, Kris Simon, overheard Olatubosun complain about an IRS notification regarding back taxes.

---

[2] It appears from the record that ENCOR is an office of ENHSA. The Amended Complaint names ENHSA as the defendant; for clarity, the court will refer to ENHSA when referring to either ENHSA or ENCOR.

2

Cohen Aff. p. 1-2. Simon stated to Olatubosun that if he didn't like the way he was being treated in this country he should go back to Nigeria.[3] Olatubosun was offended by the remark and reported it to his supervisor, Ted Franklin. Franklin and Franklin's supervisor, Mary Schutt, brought in a union supervisor to meet with Olatubosun. Olatubosun allegedly later stated to Nancy Cohen, ENHSA's Director of Human Resources, that he had no further problems with Simon, and that their relationship improved afterwards. *Id.*

On another undated occasion another co-worker stated that the plaintiff should "step aside so that the white queen" could go first - referring to a patient. The incident was reported to a supervisor who allegedly counseled the co-worker. *Id.*

Another co-worker, Jerry Kuhn, made statements regarding Olatubosun while he was out sick, including "I don't understand why any woman would want to go out with Samuel." *Id.* Additionally, Olatubosun reported to his employer that Kuhn used "racial words" when talking about another co-worker. *Id.* Franklin and Kuhn met with Olatubosun and Kuhn allegedly apologized for the remarks. However, Kuhn stated that he just doesn't like Olatubosun "on a personal level." *Id.* Franklin allegedly prepared a statement describing the conduct he expects from all staff members and presented it to an all-staff meeting.[4] The record doesn't provide what steps, if any, were taken after this meeting regarding the use of "racial words."

The final incident provided in the motions appears to have occurred on December 12, 2005. Cohen states that she received a telephone call from Olatubosun, and that Olatubosun stated that he was experiencing "serious problems." *Id.* Olatubosun indicated

---

[3] The record isn't clear if Simon stated "go back to where you came from" or "go back to Nigeria."

[4] Franklin did not provide an affidavit to this effect, nor was a copy of the statement provided as part of the motion.

that a coworker had asked him about a box of Christmas decorations that were in the way. When he indicated that he did not know where the box came from she asked him, "Why don't you know? Are you stupid?" *Id.* Then the co-worker stated that she wished he would quit this job. Olatubosun allegedly also called the co-worker "stupid." Both employees were reprimanded and instructed to resolve further workplace disputes calmly and peacefully. *Id*.

Olatubosun alleges that his supervisor, Franklin, repeated requested that he resign. Olatubosun alleges that on numerous occasions Franklin called Olatubosun into his office and verbally requested that Olatubosun resign. Filing No. 33, Deposition of Samuel Olatubosun 84:1-25. Plaintiff further asserts that Franklin put into writing the request that Plaintiff resign.[5] On March 24, 2006, Franklin provided Olatubosun with a memorandum indicating that Olatubosun would resign and provide ENHSA with two weeks of notice. Cohen Aff. p. 4. Franklin provided this to Olatubosun without first receiving approval from Franklin's supervisor Mary Schutt. *Id*. Upon receipt of the memorandum, Olatubosun walked out of Franklin's office and didn't return to work, except to collect his personal belongings. ENHSA contacted Olatubosun and informed him that Franklin did not have authority or authorization to request that Olatubosun resign. On March 30, 2006, Schutt and Ken Hill, Schutt's supervisor, met with Olatubosun. *Id.* They allegedly informed Olatubosun that ENHSA was not requesting or requiring his resignation and that he could immediately return to work in his current position. Olatubosun agreed to return; however, after discussing additional problems with Franklin, Olatubosun refused to return. *Id*.

---

[5] Plaintiff indicates that a copy of this letter was attached to his brief as Exhibit 2; however, Exhibit 2 does not appear to be the letter as referenced.

4

ENHSA asserts that Olatubosun's absenteeism was the cause of Franklin's request that he resign, not Olatubosun's race, color or national origin, nor the pending EEOC charges.[6] Olatubosun testified at his deposition that prior to starting at ENHSA, he informed his supervisors of his ill health and pending court case that would require him to be absent from work. ENHSA employees assured Olatubosun that they would be able accommodate his court case and doctor's appointments. Filing No. 32, Olatubosun Dep., 78:17-79:24.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

---

[6] ENHSA also seems to argue, without evidence, that Franklin was justified in requesting that Olatubosun resign because Olatubosun was starting his own business and would be leaving ENSHA shortly anyway.

5

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro,* 247 F.3d 826, 829 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion of summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there

6

exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## LAW

### Hostile Work Environment

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . race." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on [race or disability] which creates a hostile or abusive working environment violates Title VII." *McCown v. St. John's Health System, Inc.*, 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of racial discrimination or disability based on a hostile work environment, an employee must show: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment: (3) the harassment was based on race or disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. *Id; Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005). The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (citation omitted). "Thus, the fourth part of a hostile environment claim includes both [an] objective and subjective component: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." See *Duncan v. General Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002). In determining whether or not the alleged harassment is severe and pervasive

7

requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.* (citation omitted)

**Constructive Discharge**

The Eighth Circuit has held that to constitute a constructive discharge, the employer's actions must be conducted with the intention of causing the employee to resign. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981). Further, it is not sufficient that he simply shows a violation of Title VII. *Hutchins v. International Brotherhood of Teamsters,* 177 F.3d 1076, 1082 (8th Cir. 1999); *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 890 (8th Cir. 1998). "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir. 1999); *Kimzey v. Wal-mart Stores, Inc.,* 107 F.3d 568, 574 (8th Cir. 1997). "The intent element is satisfied by a demonstration that quitting was a 'reasonably foreseeable consequence of the employers discriminatory actions.'" *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1159 (8th Cir. 1999) (*quoting Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997)). Further, an employee has an obligation to not assume the worst and act too quickly for purposes of determining whether he or she has been constructively discharged. *Tork v. St. Luke's Hospital,* 181 F.3d 918, 920 (8th Cir. 1999). Minor changes in duties or working conditions do not constitute grounds for a constructive discharge claim. *Kerns,* 178 F.3d 1011, 1016-

17 (8th Cir. 1999); *Harleston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). However, actions amounting to a constructive discharge constitute adverse employment actions for purposes of Title VII. *Kerns v. Capital Graphics, Inc.,* 178 F.3d at 1016 (*citing Parrish v. Immanual Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)).

**Retaliation**

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). To establish a prima facie claim of retaliation, the plaintiff has to show that: (1) he filed a charge of harassment or engaged in other protected activity; (2) his employer subsequently took an adverse employment action against him; and (3) the adverse action was causally linked to his protected activity. *See Cross v. Cleaver,* 142 F.3d 1059, 1071-72 (8th Cir. 1998). If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 1071-72. If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.* at 1072.

For the purposes of this motion, Olatubosun has met the minimum requirements of showing a prima facia case for hostile workplace, retaliation and constructive discharge. The defendant has not met its burden of showing the nonexistence of any genuine issue of material fact. The affidavit of Nancy Cohen provides evidence that race was a factor at

least as to the statements made by two of his co-workers, confirms that Franklin requested that Olatubosun resign, and does not provide sufficient evidence that ENHSA took adequate steps to resolve these issues. Therefore, the court will deny the motion for summary judgment because genuine issues of material fact exist.

IT IS ORDERED that defendant Eastern Nebraska Human Services Agency's Motion for Summary Judgment, Filing No. 19, is denied.

DATED this 4th day of June, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge